THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. PETER TORO, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered May 24, 1973, convicting him of burglary in the third degree, petit larceny and criminal impersonation, upon a jury verdict, and imposing sentence. The appeal brings up for review the propriety of the denial of a pretrial motion to suppress certain identification evidence. Judgment reversed, on the law and the facts, and indictment dismissed. The People failed to establish defendant's guilt beyond a reasonable doubt. Defendant was arrested and taken into custody in connection with a larceny and an impersonation of a police officer that occurred four days prior to his arrest. After a criminal complaint was formally filed against him, he was suspended from his job, which he had held for three years, as a New York City Correction Officer. He was released on his own recognizance after pleading not guilty. At the *Wade* hearing held immediately prior to trial, the complainant, Marie Evans, almost 73 years of age and with poor vision, testified that defendant came to her apartment on a certain date, together with two other persons — a woman called Elase Glover and a man. She said defendant identified himself to her as Jose. After they left, she discovered that money was missing. Another witness related that Mrs. Evans stated the amount to be about $30. Mrs. Evans next saw defendant at a police station, where he was sitting alone in a small room. She identified him as the man who had said his name was Jose. Later, she was told by someone that his name was Peter Toro. The practice of exhibiting a defendant alone for the purpose of identification was condemned in *Stovall* v. *Denno* (388 U. S. 293) as being unnecessarily suggestive and in violation of due process. It thus became incumbent upon the People to establish by clear and convincing evidence that the identification was based upon visual observation by the complainant on the date of the alleged crime at her apartment and was not tainted by the illegal showup (*People* v. *Logan,* 25 N Y 2d 184, 191; *People* v. *Ballott,* 20 N Y 2d 600; *People* v. *Velez,* 43 A D 2d 745). This, on the record, the People failed to do. The motion to suppress the tainted identification should have been granted (*United States* v. *Wade,* 388 U. S. 218). There, the court noted (p. 229): "'It is a matter of common experience that, once a witness has picked out the accused at the line-up [here there was no lineup], he is not likely to go back on his word later on, so that in practice the issue of identity may * * * for all practical purposes be determined there and then, before the trial'" (bracketed matter supplied). Absent the identification, the People's case rested on the testimony of Elase Glover, a self-confessed participant, whose testimony required corroboration. It should be noted at this point that appellant had a previously unblemished record. He is an honorably discharged Viet Nam veteran. He lives in Brooklyn with his parents, a sister and a younger brother in a close-knit family relationship. At the time of his arrest he was earning approximately $11,000 yearly. It passes belief that he would involve himself in such a senseless crime and so jeopardize his job and his future. In addition, it came out at the trial that defendant bore a striking resemblance to one Jose Nadal, who was known to Elase Glover. Toro took the stand in his own defense and gave an hour-by-hour account of his actions on the day of the crime. He supported his assertions by proof

that he was nowhere near the Evans apartment at the time of the perpetration of the crime. According to the complainant, the intruders in her Brooklyn apartment entered at about 2:30 P.M. and stayed for 30 to 45 minutes. Yet Toro showed by documentary evidence that he was miles away in Manhattan and at his place of employment at about 3:30 P.M. He would have needed the winged feet of Mercury or the attribute of ubiquity to have been in the two places at almost the same moment. The time element itself was enough to raise a reasonable doubt and this, coupled with the tainted identification, requires that the judgment of conviction be reversed and the indictment dismissed. Gulotta, P. J., Martuscello, Latham, Cohalan and Benjamin, JJ., concur.